MONLLOR & BOSCIO, SUCRS., S. EN C., demandante y apelante, *v.* RAFAEL SANCHO BONET, ETC., demandado y apelado.

Núm. 8444.—*Sometido:* Noviembre 4, 1942. *Resuelto:* Noviembre 18, 1942.

*Harry Manuel Besosa*, abogado de la apelante; *Hon. Procurador General George A. Malcolm y A. E. Franco Cabrero, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

De acuerdo con la Ley de Espíritus y Bebidas Alcohólicas aprobada el 30 de junio de 1936 (Leyes de 1936, Tercera Sesión Extraordinaria, pág. 45), el Tesorero de Puerto Rico le cobró a Monllor & Boscio, Sucrs., de Ponce por distintas partidas de alcohol que dicha firma utilizó para fortificar ciertos vinos que fabricó, la suma total de $5,550 bajo el artículo 4,1(*a*) que le impone una contribución de $1.20 sobre cada galón de alcohol de menos de "100 prueba". Debido a que de acuerdo con el artículo 4,2 (*a*) y (*b*) de la misma ley, los vinos, incluyendo los fortificados, tienen que pagar una contribución de 30 centavos sobre cada galón cuyo contenido alcohólico sea de 14 por ciento o menos por volumen, y de 40 centavos por cada galón cuyo contenido alcohólico exceda de 14 por ciento y no alcance a 24 por ciento por volumen, Monllor & Boscio, Sucrs. pagaron bajo protesta y reclamaron la devolución de la suma antes mencionada, alegando que la contribución sobre el alcohol es nula y anticonstitucional: 1, porque constituye una doble contribución y, 2, porque el cobro de estos impuestos infringe el requisito de igualdad y uniformidad exigido por las leyes. La corte inferior desestimó la contención de la demandante. Es de

notarse que la contribución que se impugna no es la que pesa y recae sobre los vinos ya fortificados con el alcohol, sino la que se impone sobre el alcohol originalmente y sin que la ley haga ni cree exención alguna a favor de los alcoholes que se utilicen para fortificar vinos. El artículo 9 de la ley dice así:

"Artículo 9—El impuesto pesará sobre los espíritus destilados, espíritus y alcoholes tan pronto sean separados, en estado de pureza o impureza, mediante destilación u otro procedimiento de evaporación, de cualquier substancia, ya sea fermentada o no, aunque en cualquier momento subsiguiente fueren transformados en cualquier otra substancia, bien en el proceso original de destilación o evaporación o bien utilizando cualquier otro proceso subsiguiente."

Y el artículo 25 de la misma ley hace la siguiente exención:

"Artículo 25.—Los impuestos prescritos por esta ley no se cobrarán por aquellos espíritus destilados despachados por una destilería y obtenidos por cualquier persona de acuerdo con las disposiciones reglamentarias que el Tesorero prescribiere, con el fin de ser destinados a fines industriales, científicos, medicinales o químicos."

Tenemos, por lo tanto, que según la propia ley los espíritus destilados que son dedicados más tarde para fortificar los vinos fabricados por la demandante no han sido objeto de exención alguna. Según hace constar Cooley en su obra sobre *Taxation,* para constituir doble contribución, las dos o más contribuciones tienen que ser (1) impuestas sobre la misma propiedad, (2) por el mismo Estado o Gobierno, (3) durante el mismo período contributivo, y (4) para el mismo fin. 1 Cooley *on Taxation,* 4a. edición, 475, sec. 223.

Además, en ausencia de una prohibición expresa constitucional—y nuestra Carta Orgánica no la contiene—el concepto de doble contribución no tiene el alcance que el apelante en este caso quiere darle. Como resolvió esta Corte Suprema en el caso de *Pueblo* v. *Garzot,* 24 D.P.R. 231, 236: " . . el mero hecho de que una contribución sea doble, no

afecta su validez, a menos qué funcione de un modo desigual sobre la misma clase o clases de la comunidad. Cooley *on Taxation*, 3a. edición, tomo 1, página 391 y siguientes. La cuestión de si debe haber o no una doble contribución generalmente es una cuestión que pertenece a la discreción de la legislatura''.

Las autoridades están contestes en que la contribución debe recaer sobre toda la propiedad afectada y no meramente sobre una parte de ella, para así evitar el discrimen o falta de uniformidad que es la que haría nula la contribución. Como dice Cooley en su obra citada: ''La contribución duplicada directa, y con esto se quiere decir 'doble contribución' en. el sentido legal estricto, significa imponer una contribución dos veces, para el mismo fin, en el mismo año, sobre *alguna* de la propiedad del territorio en que se impone, sin que se le imponga a toda la propiedad una segunda vez, y tal contribución es invariablemente condenada y rara vez, si alguna, ha sido sostenida por las cortes en un caso determinado''. 1 Cooley *on Taxation*, 4a. edición, 475, sec. 223.

En el caso de autos la contribución se ha impuesto a todos los espíritus destilados y a todos los vinos incluyendo los fortificados. No se trata pues de la misma propiedad, sino de dos artículos distintos entre sí.

Así en el caso de *Christian Moerlein Brewing Co.* v. *Hagerty,* 8 Ohio Cir. Ct. 330, 4 O.C D. 276 (App. 52 O. St. 671, 44 N. E. 1131), se resolvió que:

''Una contribución sobre materia prima y sobre el producto acabado no constituye doble contribución cuando el estatuto separa la materia prima del producto e impone la contribución a .una u otra clase una sola vez.''

Y en el caso de *U. S.* v. *J. D. Iler Brewing Co.*, 121 F. 41, citado también por la corte inferior se resolvió que una contribución impuesta a cerveza en barriles y otra a la misma cerveza envasada en botellas y rotulada como tónico no constituía doble contribución, expresándose la corte así:

"Una contribución pagada por cerveza en barriles no exenta dicho producto de una contribución cuando posee leves propiedades tónicas y es envasada en botellas y llamada y rotulada en tal forma que lo hace caer bajo la Lista B. El demandante voluntariamente asumió la obligación de pagar la contribución cuando la embotelló, rotuló y llamó un tónico, lo que, como hemos visto, en realidad era."

Insiste, sin embargo, la apelante en que como el artículo 4 de la ley dispone que "se impondrá, cobrará y pagará, *por una sola vez* sobre los siguientes productos que se tengan en depósito o que hayan sido o puedan ser en lo sucesivo destilados, rectificados, producidos, fabricados, importados o introducidos en Puerto Rico", los impuestos que se especifican, en el caso del alcohol y del vino se ha tratado de imponer y cobrar el importe dos veces. No tiene razón la apelante y la corte inferior contestó bien este argumento al decir en su opinión lo siguiente:

"Al ordenar el legislador que el importe fuera cobrado por una sola vez quiso decir únicamente que una vez pagado por cualquier persona, fuera éste destilador, rectificador, productor, fabricante o importador, no importa por cuantas personas pasase antes de llegar a manos del consumidor, no estaría más sujeto al pago del impuesto."

Ya hemos dicho antes que en este caso se trata de dos productos: el espíritu destilado y el vino, y el segundo arbitrio se impone no sobre el alcohol que se utilizó para fortificar el vino, sino sobre el nuevo producto ya terminado— el vino. Y además, que de acuerdo con el artículo 9, supra, el importe sobre el alcohol hay que pagarlo inmediatamente que se termine la destilación "aunque en cualquier momento subsiguiente fueran transformados en cualquier otra sustancia. . . ." Una vez pagado este impuesto, contra el cual no se ha levantado cuestión legal alguna, sería el segundo impuesto o sea el que recae sobre el vino el que podría, si procediera, atacarse como una doble contribución. Pero, esto no se ha hecho por el apelante por la razón obvia de que el impuesto sobre el alcohol es de $1.20 por galón mientras que el impuesto sobre los vinos es sólo de 30 y 40 centavos por

galón. Prefirió atacar la validez de la primera contribución atribuyéndole el carácter de doble sin que pueda prevalecer, como hemos resuelto, que la contribución subsiguiente impuesta al vino ya fortificado como producto independiente pueda considerarse como una contribución al alcohol utilizado para su fortificación.

Sostiene el apelante, como segundo motivo, que el cobro de los impuestos sobre el alcohol más los del vino, infringe el requisito de igualdad y uniformidad exigido por la Carta Orgánica y por el artículo 8 de la propia Ley de Bebidas, que dispone lo siguiente:

"Artículo 8.—Los impuestos serán uniformes y generales tanto para el artículo que se produzca en el exterior y se introduzca en Puerto Rico, como para el que se fabrique o produzca en Puerto Rico, y serán cobrados por el Tesorero de acuerdo con lo dispuesto por esta Ley."

La contención de la apelante carece de méritos. Tanto el vino importado a Puerto Rico como el fabricado aquí están sujetos al mismo impuesto sin diferencia alguna. El hecho de que los vinos importados hayan tenido que pagar o no en los Estados Unidos por el alcohol que se utilizó en fortificarlos, si alguno se usó, no es cuestión que pueda tomarse en consideración por la Legislatura de Puerto Rico al determinar el impuesto que deben pagar todos los vinos en Puerto Rico, tanto los importados como los domésticos. Todo lo que requiere nuestra Carta Orgánica en su artículo 2, inciso 22, es que "las leyes para la imposición de contribuciones en Puerto Rico serán uniformes", requisito que ratifica el artículo 8 de la ley, supra, en cuanto a los impuestos sobre espíritus y bebidas alcohólicas se refiere y que queda cumplido al imponerse igual tributación a todos los vinos por igual, ya que una contribución es "uniforme" dentro del significado de una disposición constitucional de esta naturaleza cuando es "igual para todas las personas que pertenecen a la clase descrita y a quien se le impone". *Atlantic &*

*N. C. R. Co.* v. *City of Bern,* 147 N. C. 165; 60 S. E. 925; 1 Cooley *on Taxation,* 4a. ed., 547. Además, ¿qué fuerza puede tener la contención de la apelante, en cuanto a los vinos se refiere, si ella no ha impugnado ni pagado bajo protesta el impuesto sobre dicho producto?

 Arguye, por último, la apelante que la Legislatura enmendó el artículo 25 de la Ley de Bebidas en el año 1939 ((2) pág. 79) en tal forma que eliminó el cobro del impuesto sobre el alcohol utilizado para fortificar los vinos fabricados en Puerto Rico, y que esto indica que la intención de la Legislatura fué no imponer dicho tributo desde el año 1936 cuando aprobó la ley original. En efecto, por la Ley núm. 20 aprobada el 13 de junio de 1939 se enmendó el artículo 25 de la ley, *supra,* en la forma siguiente:

"Artículo 25.—Los impuestos prescritos por esta Ley no se cobrarán por aquellos espíritus destilados despachados por una destilería y obtenidos por cualquier persona de acuerdo con las disposiciones reglamentarias que el Tesorero prescribiere, con el fin de ser destinados a fines industriales, científicos, medicinales, químicos, o *para ser usados en la fortificación de vinos.*" (Bastardillas nuestras.)

Esta ley empezó a regir a los noventa días después de su aprobación o sea allá para el 13 de septiembre de 1939.

Nada hay en la enmienda que indique que fué la intención legislativa darle carácter retroactivo a la misma y en ausencia de tal disposición está firmemente establecido por las autoridades que la ley en vigor a la fecha de imponerse una contribución es la que determina si existe una exención determinada y que, no se dará carácter retroactivo a una exención contributiva a menos que dicha intención aparezca afirmativamente expresada en la misma ley; sosteniéndose además que nunca se concederá una exención contributiva por mera implicación si el lenguaje del estatuto es susceptible de cualquier otra interpretación razonable. Véanse comentarios extensos sobre la materia en 2 Cooley *on Taxation,* 4a. ed., 1375, sec. 654; 1403, sec. 672, y específicamente

sobre la fecha en que empieza una exención en la sección 711, página 1498, cuando dice: "Una exención es efectiva desde el momento en que la constitución, estatuto u ordenanza entra en vigor".

Si la ley concediendo la exención por la enmienda de 1939 no entró en vigor hasta el mes de septiembre de dicho año y no dispuso retroactividad alguna a la misma, no puede prevalecer la interpretación de la apelante.

*Debe confirmarse la sentencia apelada.*